## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Ledell Mushatt, #240886,

|                | Petitioner, | Case No. 16-13702 |

v.

Judith E. Levy
United States District Judge

Mark McCulick,

Mag. Judge Stephanie Dawkins
Davis

Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

## I. Introduction

Michigan prisoner Ledell Mushatt ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of four counts of breaking and entering, Mich. Comp. Laws § 750.110, stealing from a bank, safe, vault, or other depository, Mich. Comp. Laws § 750.531, and assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties, Mich. Comp. Laws § 750.81d(1), following a

jury trial in the Saginaw County Circuit Court. In 2013, he was sentenced to concurrent terms of 10 to 20 years imprisonment on counts of breaking and entering and stealing from a bank, safe, vault, or other depository and two to 15 years imprisonment on counts of assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties. In his pleadings, Petitioner raises claims concerning the denial of his request to substitute counsel, the legality of a search of his residence, the conduct of the prosecutor and trial counsel's failure to object to that conduct. For the reasons that follow, the petition is denied with prejudice. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner's convictions arise from a series of break-ins that occurred in Saginaw County, Michigan in 2011. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case involves four incidents of breaking and entering that occurred at the following three locations in Saginaw, Michigan: 5060 State Street on June 21, 2011; 865 Midland Road on September 28, 2011; and 138 Harrow Lane on October 1, 2011

(twice). Following defendant's arrest, Saginaw Township Police Detective Mindy Worden obtained a search warrant for 5123 Mill Wheel Drive in Grand Blanc, Michigan, the purported address of defendant's girlfriend Linda Hairston. When the police arrived at Mill Wheel Drive to execute the search warrant, they discovered the home was vacant and did not match the description presented in the warrant. They did not search the premises. Following additional investigation, Worden learned defendant and his girlfriend recently resided at 11309 Grand Oak Drive in Grand Blanc, because on September 5, 2011, the Grand Blanc Police reported a domestic dispute at that address between defendant and Hairston. Worden submitted an amended affidavit and the magistrate approved a new search warrant for 11309 Grand Oak Drive. Upon searching the premises, the police obtained, among other things, a pair of dress shoes that were submitted for comparison to a footprint found at 865 Midland Road. Defendant later moved to suppress the evidence and the trial court denied his motion.

At defendant's trial, Saginaw Township Police Officer Russell Uphold testified that he chased the suspect from the scene of the 138 Harrow Lane breaking and entering and saw his face from a distance of 8 to 10 feet before the individual escaped into an adjacent neighborhood.

Uphold testified that he recognized the suspect's face, but was unable to put a name to him. Sometime later, Uphold discovered a green Cadillac near 138 Harrow Lane, and a LIEN search revealed the vehicle was registered to a person with the last name of Mushatt. Uphold testified that he recognized the name "Mushatt," remembered the name "Ledell Mushatt," and believed he could identify the suspect fleeing the scene. Uphold testified that he pulled up the name Ledell Mushatt on the Offender Tracking Information System (OTIS), and after seeing a photograph, knew "without a doubt" that the fleeing suspect was defendant.

Prior to trial, defendant filed a motion to remove his attorney, arguing that his counsel had not filed any of the "several

motions" he requested including a "motion to reconsider an interlocutory appeal" filed with this Court, and "several motions for arraignment violations." Following a motion hearing, the court denied defendant's motion.

At the beginning of the trial proceedings, defendant raised several motions in propria persona. Defendant moved to suppress his identification, arguing that Uphold's use of OTIS to obtain his photograph and Uphold's confirmation of defendant's identity while he was under arrest was improper. The court denied the motion. Defendant moved to suppress photographs taken of the interior of the green Cadillac, which the court also denied. Defendant also moved to strike any statements pertaining to his criminal history. The court excluded evidence of other breakings and entering in the area to demonstrate defendant had employed a common plan, scheme, or intent.

*People v. Mushatt*, No. 319343, 2015 WL 2329063, *1–2 (Mich. Ct. App. May 14, 2015) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id.* at *2–6. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Mushatt*, 498 Mich. 921, 871 N.W.2d 189 (2015).

Petitioner thereafter filed this federal habeas petition. He raises the following claims as grounds for relief:

I.    He was denied his right to counsel of choice when he reported a breakdown in the attorney-client relationship and requested the appointment of new counsel, but the judge denied the request, made unsupported findings of fact, and failed to inquire adequately into the breakdown in the relationship.

II.   The search at 11309 Oak Drive violated his Fourth Amendment rights where the police lacked probable cause for the search and the affidavit in support of the search was based on inadequate information.

III.  The prosecutor violated his due process right by eliciting unfairly prejudicial testimony about his prior incarceration and defense counsel was ineffective for not objecting.

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable, procedurally defaulted, and/or lack merit.

## III. Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the statute's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but

unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to

§ 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time

the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v.*

*Smith*, _ U.S. _ 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Finally, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

### A. *Procedural Default*

As an initial matter, Respondent contends that Petitioner's prosecutorial misconduct claim is barred by procedural default due to his failure to object at trial and the Michigan Court of Appeals' denial of relief based upon that failure. On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th

Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is somewhat complex and intertwined with the substantive claims, including the effectiveness of trial counsel, and the substantive claim is more readily decided on the merits. Accordingly, the Court need not address the procedural default and shall proceed to the merits of the habeas claims.

### B. Merits

#### 1. Substitute Counsel Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in denying his request for substitute counsel where he alleged a breakdown in the attorney-client relationship. Respondent contends this claim lacks merit.

The Sixth Amendment to the United States Constitution provides for the right to counsel. U.S. Const. Amend. VI. The right to counsel

encompasses the right to counsel of choice, but that right is generally cognizable only to the extent that a defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Consequently, an indigent defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Good cause can be shown by a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).

When evaluating a trial court's denial of a request for substitute counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012); *see also Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8). The Sixth Circuit balances such factors with the public's interest in the prompt and

efficient administration of justice. *Iles*, 906 F.2d at 1131, n. 8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court and is entitled to deference absent an abuse of that discretion. *Martel*, 565 U.S. at 663–64; *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004). A court "must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).

The Michigan Court of Appeals denied relief on this claim, explaining:

> Defendant first contends that his attorney's decision not to file certain pretrial motions constituted a conflict regarding a fundamental trial tactic, which required the lower court to appoint him new counsel. This Court reviews a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v. Mack*, 190 Mich. App 7, 14; 475 NW2d 830 (1991). "An abuse of discretion occurs ... when the trial court chooses an outcome falling outside th[e] principle range of outcomes." *People v. Babcock*, 469 Mich. 247, 269; 666 NW2d 231 (2003).

> An indigent defendant is guaranteed the right to assistance of counsel, but this right does not entitle a defendant to choose any attorney by merely "'requesting that the attorney originally appointed be replaced.'" *People v. Traylor*, 245 Mich. App 460, 462; 628 NW2d 120, lv den 465 Mich. 914 (2001), quoting *Mack*,

190 Mich. App at 14. Rather, appointment of substitute counsel is only warranted "upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Mack*, 190 Mich. App at 14. "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.*

"The decision whether and when to make a motion are matters of trial strategy and professional judgment that are entrusted to a defendant's trial counsel." *People v. Rose*, 289 Mich. App 499, 527; 808 NW2d 301 (2010). Accordingly, because an attorney's "decision not to file ... motions clearly falls within the categories of professional judgment and trial strategy that are matters entrusted to the attorney," an attorney's refusal to file motions does not require new counsel. *Traylor*, 245 Mich. App at 463. The record is unclear regarding whether the motions raised by defendant in propria persona at trial were the pretrial motions he asked his attorney to raise. However, regardless of whether defendant asked his attorney to file the motions and regardless of the success of the motions, because a decision to file motions is a matter of trial strategy and professional judgment, defendant was not entitled to the appointment of new counsel on this account. *Id.*

Defendant next argues that the lower court did not adequately consider his motion to remove counsel because it did not allow defendant's attorney to respond to his arguments before denying his motion. Generally, "[w]hen a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *People v. Strickland*, 293 Mich. App 393, 397; 810 NW2d 660 (2011) (citation and internal quotation marks omitted). In this case, the court received defendant's motion to appoint new counsel and held a motion hearing to permit defendant to articulate his concerns. Defendant stated his position on the

matter, and concluded by asking the court to assign him a new attorney. Because the court was aware of defendant's argument and provided him an opportunity to voice his concerns in any way he saw fit, the court's investigation on the matter was sufficient. *Id.* (explaining that when the trial court is "aware of [a defendant's] complaints regarding appointed counsel" and provides an opportunity for the defendant to "say whatever he wants to say," the court has adequately inquired into the breakdown of the attorney-client relationship).

*Mushatt*, 2015 WL 2329063 at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law to these facts. Petitioner fails to show that substitution of appointed counsel was warranted in this case. The first factor, the timeliness of the request, weighs against Petitioner because his request for substitute counsel (which would have been his fourth attorney) was made about two weeks before the scheduled trial date. *See Trujillo*, 376 F.3d at 606 (request for substitute counsel made three days before trial was untimely); *see also United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (request for substitute counsel made one and a half months before trial was untimely). The second factor, the adequacy of the court's inquiry, weighs in Petitioner's favor to some degree because the trial court did not discuss the issue with existing counsel, but against Petitioner because the trial

court conducted a hearing and allowed him to fully explain his reasons for seeking new counsel. The third factor, whether a conflict between trial counsel and Petitioner was so great that it resulted in a complete breakdown of communication preventing an adequate defense, weighs against Petitioner because he fails to show there was any such conflict. Rather, the record indicates that counsel investigated matters requested by Petitioner and they were able to communicate and work together well enough to present an adequate defense at trial. Petitioner's complaints against counsel involve the filing/not filing of certain pre-trial motions. Such matters involve a difference of opinion about strategy rather than an irreconcilable conflict or total lack of communication. *See Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003). Moreover, Petitioner was able to present several motions, most of which were denied, to the trial court on his own. The disagreements between Petitioner and his attorney simply did not rise to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Finally, the public interest in the prompt and efficient administration of justice would have been hampered with yet another

16

substitution of counsel, as this would have further delayed the trial and resulted in additional costs to the parties and the court. Petitioner fails to establish that substitute counsel was warranted. More importantly, for purposes of federal habeas review, he fails to show that the Michigan Court of Appeals' ruling on this issue is unreasonable. Habeas relief is not warranted on this claim.

### 2. Illegal Search Claim

Petitioner next asserts that he is entitled to habeas relief because the search of the residence at 11309 Grand Oak Drive was illegal. Respondent contends that this claim is not cognizable on habeas review. The Michigan Court of Appeals denied relief on this claim finding that the police had probable cause to search the residence and that the trial court did not err in refusing to suppress the evidence seized from that location. *Mushatt*, 2015 WL 2329063 at *3–4.

It is well-settled that federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by a failure of the state's corrective process. *See Stone v. Powell*, 428 U.S. 465, 494–95 (1976). A court must perform two

distinct inquiries when determining whether a petitioner may raise an illegal arrest claim in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)). Michigan has a procedural mechanism which presents "an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93–94, 135 N.W.2d 357, 358–59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this claim only if he shows that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner makes no such showing. To the contrary, he had the opportunity to raise the illegal search issue in a suppression motion before the trial court and again on direct appeal and was denied relief. His Fourth Amendment claim is thus not cognizable on federal habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted on this claim.

### 3. Prosecutorial Misconduct Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by eliciting testimony from Officer Uphold that he identified Petitioner by looking up his name and photograph on OTIS (the Michigan Department of Corrections' Offender Tracking Information System). Respondent contends that this claim is barred by procedural default and that it lacks merit.

The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals denied relief on this claim on plain error review finding that Officer Uphold's testimony was proper and that the prosecutor elicited the testimony in good faith. The court explained:

> This Court examines all alleged prosecutorial misconduct in context to determine whether the defendant was denied a fair and impartial trial. *Leshaj*, 249 Mich. App at 419. A prosecutor is free to offer admissible evidence and to argue all reasonable inferences arising from the evidence in a manner related to the prosecutor's theory of the case. *People v. Goodin*, 257 Mich. App 425, 433; 668 NW2d 392 (2003). When a claim of prosecutorial misconduct implicates an evidentiary issue this Court "focus[es] on whether the prosecutor elicited the testimony in good faith." *People v. Dobek*, 274 Mich. App 58, 71; 732 NW2d 546 (2007). A prosecutor's good-faith effort to elicit testimonial evidence does not constitute misconduct. *People v. Noble*, 238 Mich. App 647, 660; 608 NW2d 123 (1999). A defendant cannot demonstrate that a prosecutor's introduction of evidence was in bad-faith if the evidence is "arguably admissible." *Dobek*, 274 Mich. App at 70.
>
> Generally, evidence of other crimes, wrongs, or acts of a defendant is inadmissible to prove a defendant had a propensity to commit such acts. *People v. Crawford*, 458 Mich. 376, 383; 582 NW2d 785 (1998); MRE 404(b). However, under MRE 404(b), such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act,

knowledge, identity, or absence of mistake or accident when the same is material." "Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character." *People v. Mardlin*, 487 Mich. 609, 615; 790 NW2d 607 (2010) (emphasis in original). Likewise, evidence is inadmissible only if it relates solely to the defendant's criminal propensity or character. *Id*. at 616.

In determining whether evidence is admissible under MRE 404(b), this Court employs the following test:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.... [*People v. VanderVliet*, 444 Mich. 52, 55; 508 NW2d 114 (1993), amended on other grounds 445 Mich. 1205 (1994).]

The prosecutor introduced Uphold's testimony and references to finding defendant's picture on OTIS for the purpose of explaining Uphold's process of identifying the suspect at the 138 Harrow Lane incident. Accordingly, the prosecutor offered Uphold's testimony for a permissible purpose under MRE 404(b).

Regarding the second inquiry, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, a fact of contention throughout the trial was whether defendant was the suspect who fled the 138 Harrow Lane scene. Uphold's testimony that he found defendant's photograph on OTIS explained his process of remembering defendant's face at the scene, then used defendant's

photograph on OTIS to confirm that defendant was the suspect. Uphold's testimonial references to OTIS established a foundation for his identification of the suspect at the 138 Harrow Lane incident, and therefore tended to establish a fact of consequence to the determination of the action.

MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.... Admission of evidence is unfairly prejudicial when "there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich. at 398. However, the prosecution need not use the least prejudicial evidence to present its case. *People v. Fisher*, 449 Mich. 441, 452; 537 NW2d 577 (1995). Evidence will not be barred under MRE 403 unless it "stir[s] such passion as to divert the jury from rational consideration of [the defendant's] guilt or innocence of the charged offenses." *People v. Cameron*, 291 Mich. App 599, 611–612; 806 NW2d 371 (2011).

If viewed in isolation, Uphold's references to finding defendant's photograph on OTIS could be perceived as being "marginally probative evidence" because Uphold could have testified that he found defendant's photograph through a public database without identifying OTIS. However, a prosecutor need not provide the least prejudicial evidence to make its case. *Fisher*, 449 Mich. at 452. Moreover, when viewed in the broader context of Uphold's testimony, Uphold's references to OTIS provided a clear and complete picture of his investigative process of identifying defendant. Because defendant's identity as the suspect was in contention throughout the proceedings, and Uphold was the only witness who definitively identified defendant, Uphold's testimony was not marginally probative.

Further, the probative value of Uphold's testimony likely outweighed any prejudicial effect. The prosecutor and Uphold did not identify OTIS as a criminal history database. Only

jurors who were familiar with OTIS would understand defendant's photograph in the database indicated he had previously been incarcerated. Likewise, neither the prosecutor nor Uphold identified any of the specific crimes defendant committed. Although there could be some prejudice associated with Uphold's brief reference to OTIS, because defendant's identity as the 138 Harrow Lane suspect was integral to the prosecutor's case, the evidence was admissible.

*Mushatt*, 2015 WL 2329063 at *5–6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1] It is well-settled that a prosecutor's good faith effort to admit evidence does not constitute misconduct, particularly where, as here, the trial court admits the evidence. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) (holding that "[a] prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings"). Petitioner fails to show that the prosecutor's conduct in this case was improper, let alone unfair. Officer Uphold's testimony was relevant to explain how he identified Petitioner as the person he saw and chased from the scene of the breaking and entering at 138 Harrow Lane. His testimony also concerned the central issue in the case – Petitioner's

---

[1] This Court would reach the same result under a de novo standard of review.

identity as the perpetrator of the break-ins. As discussed by the Michigan Court of Appeals, Officer Uphold's OTIS testimony was relevant and admissible under the Michigan Rules of Evidence. There is also no record evidence of bad faith on the part of the prosecution. Petitioner thus fails to establish that the prosecutor erred in eliciting the OTIS testimony or that the admission of that testimony otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### 4. Ineffective Assistance of Trial Counsel Claim

Finally, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was

not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has held that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals denied relief on this claim stating:

> Finally, defendant argues that his counsel was ineffective for failing to object during trial to Uphold's testimony that he used OTIS to confirm defendant's identity. However, defendant himself raised a pretrial objection to Uphold's testimonial references to finding defendant's photograph on OTIS and the court denied defendant's request to preclude the testimony. An additional objection would have been pointless.

*Mushatt*, 2015 WL 2329063 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Given the Michigan Court of Appeals' ruling and this Court's ruling that the underlying prosecutorial misconduct claim lacks merit, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Counsel cannot be deemed deficient for failing to make a meritless argument or futile objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner fails to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, Petitioner is not entitled to federal habeas relief. Accordingly, the Court DENIES and DISMISSES WITH PREJUDICE the petition for a writ of habeas corpus.

Before Petitioner may appeal the court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if the petitioner

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right. Accordingly, the Court DENIES a certificate of appealability.

Finally, the court DENIES Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

IT IS SO ORDERED.

Dated: June 5, 2018          s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 5, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager